Hassan A. Zavareei (SBN 181547)
Kristen G. Simplicio (SBN 263291)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
202-973-0900 (p)
202-973-0950 (f)
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Todd A. Walburg (SBN 213063)
BAILEY & GLASSER LLP
475 14th Street, Suite 610
Oakland, California 94612
Telephone: (510) 207-8633
Facsimile: (510) 463-0241
twalburg@baileyglasser.com

[Additional counsel on signature page]

*Counsel for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENDRA TRICE and ANDREW BROWN JR., *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>PENNYMAC LOAN SERVICES, LLC,<br><br>Defendant. | **Case No.  5:20-cv-01052**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Action for Breach of Contract; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 et seq.** |

Plaintiff Kendra Trice and Plaintiff Andrew Brown, Jr., (together, "Plaintiffs") on behalf of themselves and all others similarly situated, allege breach of contract, violations of the Rosenthal Fair Debt Collection Practices Act, and violations of the Unfair Competition Law against Defendant PennyMac Loan Services, LLC ("PennyMac"). In support of these claims, Plaintiffs state as follows:

## NATURE OF THE ACTION

1. Defendant PennyMac is one of the largest servicers of residential mortgages in the country.  According to their website, PennyMac services $368 billion in mortgage loans for 1.7 million homeowners, including in California.

2. But PennyMac impermissibly profits from the homeowners it purports to service by charging and collecting illegal payment processing fees when borrowers make their monthly mortgage payments by telephone or online, or when using a debit card ("Pay-to-Pay Transactions").  PennyMac routinely violates state debt collection law and breaches the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting these illegal processing fees ("Pay-to-Pay Fees").

3. PennyMac charges a Pay-to-Pay Fee of up to $15 when borrowers make payments over the phone by speaking with a PennyMac customer service representative, a Pay-to-Pay Fee of up to $5 each time a customer makes a payment online, and a Pay-to-Pay Fee of up to $6.75 for making a payment using a debit card.

4. As a servicer, PennyMac is supposed to be compensated out of the interest paid on each borrower's monthly payment—not via additional "service" fees that do not reflect the cost to PennyMac of providing such services. Under California law, PennyMac cannot mark-up the amounts it pays third parties to provide borrowers' services and impose unauthorized charges not explicitly included in the mortgage agreement to create a profit center for itself. None of the Pay-to-Pay Fees are permitted by the mortgage agreements,

and, therefore, PennyMac violates California law by charging those fees. And, by charging these unauthorized Pay-to-Pay Fees, PennyMac violates its contractual obligations to its borrowers.

5. Despite its uniform contractual obligations to charge only fees explicitly allowed under the mortgage, applicable law, and only those amounts actually disbursed, PennyMac leverages its position of power over homeowners and demands exorbitant Pay-to-Pay Fees. Upon investigation and belief, the actual cost for PennyMac to process online mortgage payment transactions is very low—well below the Pay-to-Pay Fees that PennyMac charges mortgagers. PennyMac pockets the difference as pure profit.

6. Plaintiffs Kendra Trice and Andrew Brown, Jr. paid these Pay-to-Pay Fees, and bring this class action lawsuit individually and on behalf of all similarly situated putative class members to recover the unlawfully charged Pay-to-Pay Fees and to enjoin PennyMac from continuing to charge these unlawful fees.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over PennyMac because PennyMac has its principal place of business in California, does business in California, and performed the wrongful acts giving rise to this lawsuit in California, as described in this Complaint.

8. Venue is proper in this District because PennyMac does business in and maintains its principal place of business in this District, and the causes of action asserted herein arose in this District.

9. Subject matter jurisdiction exists under the Class Action Fairness Act because diversity exists between the defendant and at least one class member and the amount in controversy exceeds $5,000,000.

**PARTIES**

10. Plaintiff Kendra Trice is a natural person residing in California who has a mortgage loan serviced by PennyMac.

11. Plaintiff Andrew Brown, Jr. is a natural person residing in California who has a mortgage loan serviced by PennyMac.

12. Plaintiffs make loan payments over the phone, and each time they do so, PennyMac charges them a Pay-to-Pay Fee. For example, on November 27, 2019, December 28, 2019, and February 27, 2020, PennyMac charged Plaintiffs a $6.75 Pay-to-Pay Fee for making a payment over the phone.

13. Defendant PennyMac is a Delaware limited liability company with a principal place of business located in Ventura County, California.

## APPLICABLE LAW

**ROSENTHAL ACT**

14. The Rosenthal Act is a remedial statute [that] should be interpreted broadly in order to effectuate its purpose.

15. The Rosenthal Act defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code §1788.2(c).

16. The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code §1788.2(f).

17. The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code §1788.2(e).

18. The Rosenthal Act prohibits "Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b).

19. The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

20. The Rosenthal Act makes it illegal for any entity covered by it to violate the federal FDCPA. Cal. Civ. Code § 1788.17.

**THE CALIFORNIA UNFAIR COMPETITION LAW**

1. The UCL defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

2. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

3. In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

**FACTUAL ALLEGATIONS**

*The Mortgage Servicing Industry*

21. Mortgage lenders rarely service their own loans. In many cases, lenders specialize in the origination of the loan, but they are not equipped to handle the day-to-day administrative tasks that come with a mortgage. Instead of managing these duties in-house, they assign the servicing rights of their loans to a designated servicer—a company that specializes in the actual management and administration of mortgages.

22. A mortgage servicer is a company that, in turn, handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements and managing escrow accounts.

23. PennyMac is a loan servicer that operates around the country.

24. Each time a mortgage borrower whose loan is serviced by PennyMac makes a payment over the phone ("Pay-to-Pay Transaction"), PennyMac charges the borrower a Pay-to-Pay Fee of up to $15 when borrowers make payments over the phone by speaking

with a PennyMac customer service representative, a Pay-to-Pay Fee of up to $5 each time a customer makes a payment online, and a Pay-to-Pay Fee of up to $6.75 for making a payment using a debit card.

25. The usual cost that a servicer like PennyMac pays to process Pay-to-Pay Transactions is $0.50 or less per transaction. Thus, the actual cost to PennyMac to process the Pay-to-Pay Transactions is well below the amounts charged to borrowers, and PennyMac pockets the difference as profit.

26. The Uniform Mortgages of PennyMac's customers do not authorize PennyMac to charge Pay-to-Pay Fees. In fact, the Pay-to-Pay Fees violate borrowers' mortgages.

### Named Plaintiffs' Facts

27. On or around July 2, 2019, Mr. Brown and Ms. Trice, a married couple, purchased a home in Apple Valley, California, through a loan from Get A Rate, LLC, secured by a mortgage on the property (the "Mortgage Agreement"). The Mortgage Agreement is attached as **Exhibit A.** Mr. Brown took out the mortgage loan secured by his property for personal, family, or household uses.

28. At some point, PennyMac was assigned the servicing rights to the loan. As servicer, PennyMac has the right to collect payments and perform services for the borrower on behalf of the lender. The Mortgage Agreement provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 20. The Mortgage Agreement further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 20) and benefit the successors and assigns of Lender." Ex. A ¶ 13.[1] PennyMac thus became bound as an assignee to the Mortgage Agreement at the time it acquired the servicing rights.

---

[1] Section (or Paragraph) 20 provides: "The note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects periodic payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this

29. Plaintiffs' mortgage payments are due on the 1st of the month each and every month, and a late charge will be assessed if payments are not received during the 15-day grace period.

30. Each time Plaintiffs make mortgage payments over the phone, PennyMac charges them a Pay-to-Pay Fee. For example, on November 27, 2019, December 28, 2019, and February 27, 2020, PennyMac charged Plaintiffs a $6.75 Pay-to-Pay Fee for making a payment over the phone. These fees are not authorized by the Mortgage Agreement.

31. PennyMac collects the Pay-to-Pay Fees even though it knows that such fees are not authorized under the Mortgage Agreement and that it therefore has no right to collect them.

32. Like other borrowers whose mortgages are serviced by PennyMac, Plaintiffs' Mortgage Agreement incorporates standard language from Fannie Mae model mortgages. And like other Fannie Mae mortgages, the Mortgage Agreement states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 14.

33. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2, ¶ (J).

34. The Mortgage Agreement further states that it is "governed by federal law and the law of the jurisdiction in which the Property is located," *i.e.*, California. Ex. A ¶ 16.

35. Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement violated the Rosenthal Act, *i.e.*, California law. *See* Cal. Civ. Code §§ 1788.13(e), 1788.14(b), 1788.17.

---

Security Instrument, and Applicable Law. There might also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change under the Loan Servicer, Borrower will be given written notice of the change . . . . If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." Ex. A ¶ 20.

36. By collecting Pay-to-Pay Fees in violation of "Applicable Law," *i.e.*, the Rosenthal Act, PennyMac breached the uniform covenants of the Mortgage Agreement.

37. Even if PennyMac was somehow permitted to collect a fee under the auspice that it is a default related fee, under Paragraph 9 of the Mortgage Agreement, PennyMac's demand for payment of Pay-to-Pay Fees was and is a direct breach of that paragraph, too.

38. Paragraph 9 of the Mortgage Agreement states that only "amounts *disbursed* by Lender under this Section 9 shall become an additional debt of Borrower secured by this Security Instrument." *See* Ex. A ¶ 9 (emphasis added).

39. PennyMac collected more than the amount they disbursed to process the Pay-to-Pay Transactions.

40. The above paragraphs are contained in the Uniform Covenants section of the Mortgage Agreement. PennyMac thus breached its contracts on a class-wide basis.

41. Prior to filing this Complaint, Plaintiffs made written pre-suit demands upon PennyMac.

42. PennyMac was given a reasonable opportunity to cure the breaches complained of herein but has failed to do so.

## CLASS ACTION ALLEGATIONS

43. Plaintiffs bring this action on behalf of the following class of persons (the "Class"), subject to modification after discovery and case development:

> **All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by PennyMac, (3) and who paid a fee to PennyMac for making a loan payment by telephone, IVR, at an ATM, or the internet, during the applicable statutes of limitations through the date a class is certified.**

44. Class members are identifiable through Defendant's records and payment databases.

45. Excluded from the class are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

46. Plaintiffs propose that they serve as class representatives.

47. Plaintiffs and the Class have all been harmed by the actions of Defendant.

48. Numerosity is satisfied. There are thousands of class members. Individual joinder of these persons is impracticable.

49. There are questions of law and fact common to Plaintiffs and to the Class, including, but not limited to:

    a. Whether PennyMac assessed Pay-to-Pay Fees on Class members;

    b. Whether PennyMac breached its contracts with borrowers by charging Pay-to-Pay Fees not authorized by their mortgage agreements;

    c. Whether PennyMac violated the Rosenthal Act by charging Pay-to-Pay Fees not due;

    d. Whether PennyMac violated the UCL;

    e. Whether PennyMac's business practices are unfair;

    f. Whether PennyMac's business practices are unlawful;

    g. Whether PennyMac's cost to process Pay-to-Pay Transactions is less than the amount that it charged for Pay-to-Pay Fees;

    h. Whether Plaintiffs and the Class were damaged by PennyMac's conduct;

    i. Whether Plaintiffs and the Class are entitled to actual and/or statutory damages as a result of PennyMac's actions;

    j. Whether Plaintiffs and the Class are entitled to restitution;

    k. Whether Plaintiffs and the Class are entitled to attorney's fees and costs.

50. Plaintiffs' claims are typical of the claims of the Class members. PennyMac charged them Pay-to-Pay Fees in the same manner as the rest of the Class members. Plaintiffs and the Class members entered into uniform covenants in their Mortgage

Agreements that prohibit Pay-to-Pay charges or, at most, cap the amount of Pay-to-Pay Fees allowed to be charged at the actual amount disbursed by PennyMac to process Pay-to-Pay Transactions.

51. Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the class members and they will adequately and fairly protect the interests of the class members. Plaintiffs have taken actions before filing this amended complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the class.

52. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

53. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**COUNT I**
**Violation of the Rosenthal Fair Debt Collection Practices Act**
**Cal. Civ. Code §§ 1788 *et seq.* (Rosenthal Act)**
**On behalf of Plaintiffs and the Class**

54. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

55. The Rosenthal Act applies to PennyMac because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

56. PennyMac knew that the Pay-to-Pay Fees were not expressly set out in the Mortgage Agreement or the mortgage agreements of the other Class Members, yet it collected them anyway.

57. The Rosenthal Act makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

58. By assessing Pay-to-Pay Fees, PennyMac represented that the mortgage loan debts of Plaintiffs and the Class Members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation.

59. This conduct violated the Rosenthal Act.

60. The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

61. When PennyMac collected Pay-to-Pay Fees from Plaintiffs and the Class Members, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law. This conduct violated the Rosenthal Act.

62. By charging Pay-to-Pay Fees, a portion of which it retains, PennyMac acted in violation of the federal Fair Debt Collection Practices Act, which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

63. The mortgage agreements of Plaintiffs and the Class Members do not expressly authorize PennyMac to collect Pay-to-Pay Fees. At most, the Uniform Mortgages permit PennyMac to collect the actual amount disbursed to process the Pay-to-Pay Transactions.

64. Although the mortgage agreements of Plaintiffs and the Class Members do not expressly authorize collection of Pay-to-Pay Fees, PennyMac collected such fees anyway.

65. In so doing, PennyMac violated 15 U.S.C. § 1692f.

66. The Rosenthal Act makes it illegal for any entity covered by the Rosenthal Act to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the federal FDCPA, PennyMac violated the Rosenthal Act

67. Plaintiffs and the Class Members were harmed when PennyMac violated the Rosenthal Act through the above-described conduct.

68. As a result of each and every violation of the Rosenthal Act, Plaintiffs and the Class Members are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation, pursuant to Cal. Civ. Code §§ 1788.30(b), 1788.17, and 1788.32, to the full extent provided by law; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c).

**COUNT II**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**On behalf of Plaintiffs and the Class**

69. Plaintiffs incorporate the foregoing allegations as if fully set forth herein..

70. The California Unfair Competition Law "UCL" defines unfair business competition to include any "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

**Unlawful Prong**

71. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

72. PennyMac's conduct violates the Rosenthal Act and the FDCPA. These violations are sufficient to support Plaintiffs' and the Class' claim under the unlawful prong of the UCL.

73. The Rosenthal Act applies to PennyMac because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

74. PennyMac knew that the Pay-to-Pay Fees were not expressly set out in the Mortgage Agreement or the mortgage agreements of the other Class Members, yet it collected them anyway.

75. The Rosenthal Act makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

76. By assessing Pay-to-Pay Fees, PennyMac represented that the mortgage loan debts of Plaintiffs and the Class Members may be increased by the addition of the Pay-to-Pay Fees, even though Pay-to-Pay Fees may not be legally added to the existing obligation.

77. This conduct violated the Rosenthal Act.

78. The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

79. When PennyMac collected Pay-to-Pay Fees from Plaintiffs and the Class Members, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law. This conduct violated the Rosenthal Act.

80. By charging Pay-to-Pay Fees, a portion of which it retains, PennyMac acted in violation of the federal Fair Debt Collection Practices Act, which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

81. The mortgage agreements of Plaintiffs and the Class Members do not expressly authorize PennyMac to collect Pay-to-Pay Fees. At most, the Uniform Mortgages permit PennyMac to collect the actual amount disbursed to process the Pay-to-Pay Transactions.

82. Although the mortgage agreements of Plaintiffs and the Class Members do not expressly authorize collection of Pay-to-Pay Fees, PennyMac collected such fees anyway.

83. In so doing, PennyMac violated 15 U.S.C. § 1692f.

84. The Rosenthal Act makes it illegal for any entity covered by the Rosenthal Act to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the federal FDCPA, PennyMac violated the Rosenthal Act

85. As a result of the above conduct, Plaintiffs and the Class have suffered economic injury, and PennyMac has been unjustly enriched at their expense. PennyMac has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

86. Through its unlawful acts and practices, PennyMac has improperly obtained money from Plaintiff and the members of the Class. As such, Plaintiffs request that the Court cause PennyMac to restore the money to Plaintiff and the Class and enjoin PennyMac from continuing to violate the Rosenthal Act, FDCPA, and UCL. Plaintiffs' mortgage continues to be serviced by PennyMac, and they intend to make mortgage payments over the phone in the future. Absent an injunction, Plaintiffs and the Class Members may be irreparably harmed and/or denied an effective and complete remedy.

**Unfair Prong**

87. In addition, a business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

88. PennyMac's actions constitute "unfair" business practices because, as alleged above, PennyMac engaged in the immoral, unethical, oppressive, and unscrupulous practice of charging Pay-to-Pay Fees not authorized by the Uniform Mortgages or applicable law.

PennyMac's unfair practice was substantially injurious to consumers, who were forced to pay $5 each time they wished to make payments by phone. Because PennyMac charged fees well above the actual cost of providing phone payment services, there are no countervailing benefits to consumers or competition that outweigh the injuries suffered by Plaintiffs and the Class.

89. As a result of the above conduct, Plaintiffs have suffered economic injury, and PennyMac has been unjustly enriched at the expense of Plaintiffs and members of the Class. PennyMac has been unjustly enriched by obtaining revenues and profits that it would not have obtained otherwise absent its unlawful conduct.

90. Through its unlawful acts and practices, PennyMac has improperly obtained money from Plaintiffs and the Class Members. As such, Plaintiffs request that the Court cause PennyMac to restore the money to Plaintiffs and the Class and enjoin PennyMac from continuing to violate the UCL in the future. Plaintiffs' mortgage continues to be serviced by PennyMac, and they intend to make mortgage payments over the phone in the future. Absent an injunction, Plaintiffs and the Class Members may be irreparably harmed and/or denied an effective and complete remedy.

**COUNT III**
**Breach of Contract**
**On Behalf of Plaintiffs and the Class**

91. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

92. Plaintiffs and the Class Members entered into contracts with PennyMac. PennyMac breached its contracts with Plaintiffs and the Class Members when it charged Pay-to-Pay Fees not agreed to in their mortgage agreements, specifically prohibited by their

mortgage agreements, and in excess of the amounts actually disbursed by PennyMac to pay for the cost of Pay-to-Pay Transactions.

93. Plaintiffs purchased a home subject to the Mortgage Agreement. *See* Ex. A.

94. At some point, PennyMac was assigned the servicing rights to the loan. As servicer, PennyMac has the right to collect payments and perform services for the borrower on behalf of the lender. The Mortgage Agreement provides that the loan servicer possesses a "partial interest in" the Note, which may be transferred. *See* Ex. A ¶ 20. The Mortgage Agreement further provides that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in section 20) and benefit the successors and assigns of Lender." Ex. A ¶ 13. PennyMac thus became bound as an assignee to the Mortgage Agreement at the time it acquired the servicing rights to the subject mortgage loan.

95. Each time Plaintiffs make mortgage payments over the phone, PennyMac charges them a Pay-to-Pay Fee. For example, on November 27, 2019, December 28, 2019, and February 27, 2020, PennyMac charged Plaintiffs a $6.75 Pay-to-Pay Fee for making a payment over the phone. These fees are not authorized by the Mortgage Agreement.

96. These fees were not authorized by the Mortgage Agreement.

97. Like other borrowers whose mortgages are serviced by PennyMac, Plaintiffs' Mortgage Agreement incorporates standard language from Fannie Mae model mortgages. And like other Fannie Mae mortgages, the Mortgage Agreement states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law." Ex. A ¶ 14.

98. The Mortgage Agreement states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., California. Ex. A ¶ 16. It further states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 14.

99. "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2 ¶ (J).

100. Charging Pay-to-Pay Fees not authorized by the Mortgage Agreement violated the Rosenthal Act, i.e., California law. *See* Cal. Civ. Code §§ 1788.13(e), 1788.14(b), 1788.17.

101. By collecting Pay-to-Pay Fees in violation of "Applicable Law," i.e., the Rosenthal Act, PennyMac breached the uniform covenants of the Mortgage Agreement.

102. Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by lender" to become the debt of the borrower. *See* Ex. A ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Plaintiffs' mortgage, PennyMac violated Paragraph 9 of the Mortgage Agreement.

103. Because the above provisions are contained in the "Uniform Covenants" section of the Mortgage Agreement, PennyMac has breached their contracts on a class-wide basis.

104. Plaintiffs and the members of the Class were damaged by PennyMac's breach.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court:

105. Certify the proposed Class;

106. Award damages, including compensatory and exemplary damages, to Plaintiffs and the Class in an amount to be determined at trial;

107. Award statutory damages and/or penalties to Plaintiffs and the Class;

108. Permanently enjoin PennyMac from the wrongful and unlawful conduct alleged herein;

109. Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

110. Award pre- and post-judgment interest to the extent provided by law; and

111. Award such further relief as the Court deems appropriate.

**<u>PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE.</u>**

Dated: May 18, 2020

Respectfully Submitted,
   /s/  *Hassan A. Zavareei*
Hassan A. Zavareei (SBN 181547)
Kristen G. Simplicio (SBN 263291)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
202-973-0900 (p)
202-973-0950 (f)
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

Annick M. Persinger (SBN 272996)
V Chai Oliver Prentice (SBN 309807)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
510-254-6808 (p)
202-973-0950 (f)
apersinger@tzlegal.com
vprentice@tzlegal.com

Todd A. Walburg (SBN 213063)
BAILEY & GLASSER LLP
475 14th Street, Suite 610
Oakland, California 94612
Telephone: (510) 207-8633
Facsimile: (510) 463-0241
twalburg@baileyglasser.com

*Counsel for Plaintiff and the Proposed Class*